UNITED STATES of America, Plaintiff,

v.

Charles C. GATES, Jr., June S. Gates, Brown W. Cannon and Charla Gates Cannon, Defendants.

UNITED STATES of America, Plaintiff,

v.

Brown W. CANNON and Charla Gates Cannon, Defendants.

Civ. A. Nos. 8103, 8179.

United States District Court
D. Colorado.

Aug. 5, 1964.

Lawrence M. Henry, U. S. Atty. for the District of Colorado, Denver, Colo., Robert L. Handros, Dept. of Justice, Washington, D. C., for United States of America.

Dayton Denious, Denver, Colo., for defendants.

DOYLE, Judge.

There is before the Court defendants' motion of June 4, 1964, requesting an order requiring plaintiff to produce for inspection and copying certain files, file materials, reports and information in the possession of the plaintiff. It has already been made clear in the proceedings in open court that the plaintiff, the United States, has shown no reason why it stands on any different basis in the instant case than does any other litigant of whom discovery is sought under Rule 34 F.R.Civ.P. The United States certainly has the rights of other litigants, as shown in a prior decision of this Court wherein it has been ruled that a government agency, like any other party, can claim the attorney-client privilege for confidential communications passing between the agency, as client, and the Department of Justice, as its attorney. United States v. Anderson, 34 F.R.D. 518 (D.Colo. 1963). Another decision of this Court has indicated, however, that any litigant may be obliged, under certain circumstances, to produce nonprivileged written statements of witnesses which are in his possession or under his control even though the witnesses are also available for deposition. Johnson v. Ford, 35 F.R.D. 347 (D.Colo.1964). Discovery under Rule 34 is possible only if the documents sought to be discovered are not "privileged," within the meaning given that word in the context of discovery under the Rules, and if the party seeking discovery makes a showing of "good cause." The test of "good cause" however, is not so stringent in the ordinary case as it is where the documents in question embody the work product of an attorney in preparation for trial. Johnson v. Ford, supra. Genuinely confidential communications between attorney and client, unlike documents which merely embody the work product of an attorney, are privileged in the traditional evidentiary or testimonial sense, and are immune from discovery. Insurance Co. of North America v. Union Carbide Corp., 35 F.R.D. 520 (D.Colo.1964).

The work product of an attorney fits neither into the category of witness statements discoverable on a minimal showing of good cause, as, for example, in Johnson v. Ford, supra, nor into the category of truly confidential attorney-client communications, which are immune from discovery, as, for example, in Insurance Co. of North America v. Union Carbide Corp., supra.

Ordinary witness statements of the sort involved in Johnson v. Ford can not be regarded as privileged in any sense. The confidential attorney-client communications involved in Insurance Co. of North America v. Union Carbide Corp. were privileged in the traditional evidentiary or testimonial sense. Documents embodying the work product of an attorney occupy a middle ground. The Court of Appeals for the Third Circuit recognized this in Hickman v. Taylor, 153 F.2d 212 (1945), aff'd. 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and attempted to describe the position which such documents occupy in these words:

" * * * [T]he Rules do not expressly cover the exact question presented here. * * *

"Our consideration of the problem leads us to the conclusion that there is more in the exception of 'privilege' [as that term is used in the Federal

Rules] than has been so far developed. * * *

* * * * * *

"The heart of the case is what we put into that concept. The Rules, so far at any rate, do not give us the formula. * * *

"We do not doubt that privilege as used in the Rules includes all that is comprehended in the rule of testimonial exclusion of confidential statements made by a client to his lawyer. That would not exclude the material asked for here, since the statements the lawyer got and interrogatories asked for were not from the client but third parties. Such are not included in the rule of exclusion. There are decisions which have extended the privilege to other situations. These tend to show a feeling on the part of judges that 'privilege' as the term is used in the Federal Rule and 'privilege' as one finds the term in the law of evidence as a ground for excluding testimony are not identical. We agree that they are not * * *.

"We are clear in our own minds, however, that 'privilege' as used in the Rules comprehends [the work product of the lawyer] * * *.

"The reason for this frank extension of privilege beyond testimonial exclusion rests on the same foundation that the rule of evidence does. * * * It is * * * a rule of public policy, and the policy is to aid people who have lawsuits and prospective lawsuits. * * *" 153 F.2d at 220–223.

The Advisory Committee to the Supreme Court, however, subsequently questioned certain of the implications of giving to the term "privileged" a broader or different meaning in the discovery context than it had in the law of evidence. Committee Note of 1946 to Proposed Amendments, set out at 4 Moore Federal Practice, ¶30.01[4]. The Su-

preme Court, when it came to consider the Hickman case on appeal, had pending before it a proposed amendment to Rule 30(b) which would have made much more than the work product of an attorney normally non-discoverable. The Court dealt with the problem of discovery of an attorney's work product by decision rather than by Rule, preserving the flexibility which it is imperative be maintained. Although the judgment of the Court of Appeals for the Third Circuit was affirmed, the Supreme Court's reasoning differed from that of the Court of Appeals. The Supreme Court summarily disposed of the argument that the documents in question were protected by the attorney-client privilege, which was the only species of privilege alleged to be involved. Whether some sort of qualified privilege other than the traditional attorney-client privilege protects the attorney from being obliged to disclose his work product is not discernible from the opinion with perfect clarity. Moore's analysis of the Supreme Court's holding is that "[t]he basis for the Court's holding that discovery should not have been allowed on the facts of the case before it was that plaintiff had made no showing of necessity for the discovery.", implying that the work product of an attorney could be discovered when exceptionally good cause therefor was shown. 4 Moore Federal Practice ¶26.23 [7] at 1362.

Whether one says, as the Court of Appeals for the Third Circuit did, that the work product of an attorney is qualifiedly protected from discovery by a new species of "privilege" (within the meaning of the discovery rules only), or whether one concludes that the work product of an attorney, although not privileged in the traditional evidentiary or testimonial sense, is nevertheless not discoverable, save on an exceptional showing of good cause—a far greater showing of good cause than is required when, say, the written statement of a witness, prepared by the witness, is

528

sought—makes no practical difference. The upshot of the matter is that the impressions, analysis, and strategy of an attorney, acting as such, are protected from disclosure, albeit not absolutely.

It has already been indicated from the bench that the documents itemized in defendants' motion of June 8, 1964, if they exist at all, must necessarily be in the possession, custody, or control of the United States. It has been indicated that they have not been shown to be privileged, even if they are governmental documents embodying the work product of agents of the Internal Revenue Service and attorneys of the Department of Justice, and that good cause for their production has been shown. We conclude also that the documents sought have been designated with the requisite specificity, and that they are relevant to subject matter involved in the pending action. The government has refused to produce the documents in question, however, and persists in its contention that they are privileged.

■ It is not contended that documents sought consist of confidential attorney-client communications between the Internal Revenue Service and the Department of Justice. The government's claim that they embody the work product of government attorneys is misleading. No work product of any attorney, as such, is privileged in the traditional evidentiary or testimonial sense. While it is true that documents embodying the work product of an attorney, acting as such, are not normally discoverable, save on an exceptional showing of good cause, this is not because they are privileged in the way that confidential attorney-client communications are; it is, rather, because courts respect the policy of Hickman v. Taylor, a policy of not unreasonably inhibiting attorneys from reducing their mental impressions, analysis and strategy to writing for their own use.

■ Only on the ground that the documents in question are the subject of what has been called "executive privilege," formally claimed, might they arguably be withheld from the defendants. Executive privilege has been formally claimed with respect to the documents in question by the Attorney General of the United States. The fact that the Attorney General has asserted the privilege certainly produces pause and utmost care, but the claim must be nevertheless refused because the basis for the claim is not the contention that military, diplomatic or other high policy secrets are involved. United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953). It is, rather, that the documents sought embody the work product of government attorneys in preparation for trial.

■ This claim of privilege must be rejected for three alternate reasons:

1. The government has neither established nor offered to establish that the documents sought consist in any way of trial preparation materials embodying the work product of government attorneys within the scope of the doctrine of Hickman v. Taylor, supra. The documents sought, indeed, appear to consist of historical files, prepared by the Internal Revenue Service (not the Department of Justice), respecting the valuation of Gates Rubber Company stock, and past tax returns of members of the Gates family which are plainly indicated to be relevant to the subject matter of this lawsuit instituted by the United States to recover a tax refund which it made to the defendants.

■ 2. Even on the assumption that the documents sought to be discovered do embody the work product of government attorneys, we would conclude that exceptional good cause for their production has been shown. The interest of the defendants in securing the information in the historical files of the Internal Revenue Service relating to their family company is great, and may, indeed, be imperative in view of the government's seeming reliance on its analysis of the details of intertwined family and com-

pany financial transactions involving at least three generations of members of the Gates family to establish the civil claim which it has brought against particular members of the family in this action.

3. Even on the assumption that the documents in question were the proper subject of a claim of executive "housekeeping" privilege, the government's claim of that privilege must be deemed to have been waived when it instituted this lawsuit. We conclude that the government, especially in a civil action of this sort, waives any executive privilege which might arguably exist otherwise—including even the entirely legitimate privilege which the government might otherwise assert with respect to diplomatic and military service—when it, as plaintiff, maintains an action in which the documents in question would be discoverable in the absence of the purported executive privilege. 8 Wigmore, Evidence (McNaughton Rev.1961) § 2379, at p. 812, citing cases. See particularly Mitchell v. Bass, 252 F.2d 513 (8th Cir.1958).

As a matter of fairness and equity the government can not, in our view, be permitted to maintain a civil action against one of its citizens, relying for its case on documentary evidence respecting the intricacies of the family-company financial dealings which are under attack here, and at the same time refuse to permit the very family and company whose dealings are under attack to have access to the materials which appear at this juncture to provide the raw material both for the government's claim against these particular family members—and for their defense.

For these reasons, together with those expressed previously from the bench, it is therefore

Ordered that the defendants' motion of June 8, 1964 for production of documents be, and the same is hereby granted.